**THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | |
|---|---|
| DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C. AND NAGRASTAR LLC | : <br> : <br> : |
| Plaintiffs, | : CIVIL ACTION NO. CV-11-5129 (ADS) <br> : <br> : |
| -against- | : SECOND AMENDED COMPLAINT <br> : <br> : |
| WORLD CABLE INC., d/b/a www.worldcable.tv, PREMIUM HOSTING.NET INC. STATEWIDE MANAGEMENT HOLDING, INC, SAJID SOHAIL, YASMINE MALIK, SHAHID RASUL A/K/A "BOB RASUL" and JOHN and JANE DOES 1- 5 | : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants | : |

-------------------------------------------------------------X

## I. Introduction & Nature of the Case

1.    The Plaintiffs, who operate various elements of the DISH Network satellite television system, bring this action against Defendants, World Cable, Inc., d/b/a www.worldcable.tv, Premium Hosting.net Inc., Statewide Management Holding, Inc., Sajid Sohail, Yasmine Malik, Shahid Rasul a/k/a "Bob Rasul" and John and Jane Does 1-5 ("Defendants") for their: unauthorized utilization of the Plaintiffs' satellite television signals; unlawful re-broadcasting and distribution of the Plaintiffs' satellite television signals and distribution of receivers designed to effectuate the unlawful re-broadcasting and distribution of the Plaintiffs' satellite television signals.

2.    The Defendants' actions violated the Communications Act, 47 U.S.C. § 605 and New York Law.

3.    The Plaintiffs bring this action to restrain these illegal activities and for other relief as further described in this Complaint.

1

## II. The Parties

4.    The Plaintiff DISH Network L.L.C. ("DISH") is a Colorado Limited Liability Company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado. DISH's sole member is DISH DBS Corporation, a Colorado Corporation, with its principal place of business located in Englewood, Colorado which in turn is an indirect wholly owned subsidiary of DISH Network Corporation, a Nevada Corporation. DISH Network Corporation's principal place of business is located in Englewood, Colorado and it is publicly owned and traded on the NASDAQ national market under the symbol "DISH." DISH operates a Direct Broadcast Satellite ("DBS") system under the trade name "DISH Network®," which was launched in 1996 and which now has over thirteen million subscribers.

5.    The Plaintiff EchoStar Technologies L.L.C. ("EchoStar") is a Texas Limited Liability Company with its principal place of business located at 100 Inverness Terrace East, Englewood, Colorado. EchoStar's sole member is EchoStar Corporation, a Nevada Corporation. EchoStar Corporation principal place of business located in Englewood, Colorado and is publicly owned and traded on the NASDAQ national market under the symbol "SATS." EchoStar is the designer and manufacturer of the legitimate DISH satellite hardware described herein.

6.    The Plaintiff NagraStar LLC ("NagraStar") is a Colorado Limited Liability Company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado. NagraStar is a joint venture between EchoStar Corporation and the Kudelski Group, a group of companies headquartered in Switzerland. NagraStar LLC's sole members are EchoStar Corporation and Kudelski SA. EchoStar Corporation is identified above and Kudelski SA has its principal place of business at 22-24, Route de Genève,

1033 Cheseaux Switzerland and it is listed on the SIX Swiss Exchange under the symbol "KUD." NagraStar provides the technical measures that control access to DISH signals described herein.

7. The Defendant World Cable, Inc. ("World Cable") is a New York corporation that, through New York Secretary of State filings, claims a business address of 1983 Marcus Ave., North New Hyde Park, Nassau County, NY 11042. On information and belief World Cable is not currently located at the Marcus Ave. address; World Cable does maintain a business facility located at 49-62 Van Dam Street, Long Island City, NY 11101.

8. The Defendant World Cable operates the website www.worldcable.tv and, as such, at times pertinent herein, it is doing business while utilizing the name of the website www.worldcable.tv.

9. The Defendant Shahid Rasul, a/k/a "Bob Rasul", is the Chairman or Chief Executive officer of World Cable.

10. The Defendant Premium Hosting.net Inc. ("Premium Hosting") is a New York corporation that, through New York Secretary of State filings, claims a business address of 44-27 Purves Street, Long Island City, New York, 11101. On information and belief Premium Hosting is not currently located at the Purves Street address; Premium Hosting does transact some business at a facility located at 49-62 Van Dam Street, Long Island City, NY 11101.

11. The Defendant Shahid Rasul, a/k/a "Bob Rasul", is the President of Premium Hosting.

12. The Defendant Statewide Management Holding, Inc. ("Statewide") is a New York corporation that, through its New York Secretary of State filings, claims a business address of 1983 Marcus Ave., North New Hyde Park, Nassau County, NY 11042. On

3

information and belief Statewide is not currently located at the Marcus Ave. address; Statewide does transact some business at a facility located at 49-62 Van Dam Street, Long Island City NY 11101.

13.   The Defendant Sajid Sohail is the Chairman or Chief Executive Officer of Statewide.

14.   The Defendant Sajid Sohail is a natural person and a New York resident with an address of 270 I U Willets Rd., Albertson, Nassau County, NY 11507.

15.   The Defendant Yasmine Malik is a natural person and a New York resident with an address of 270 I U Willets Rd., Albertson, Nassau County, NY 11507.

16.   The Defendant Shahid Rasul, a/k/a "Bob Rasul", is a natural person and a New York resident with an address of 226 Floral Ave., Plainview, Nassau County, NY 11803.

17.   Upon information and belief, John and Jane Does 1-5 are persons, the identity of whom are presently unknown to Plaintiffs but known to one or more of the Defendants, who assisted or participated with Defendants and their activities as set forth in this Complaint.

### III. Jurisdiction & Venue

18.   This action arises under the Federal Communications Act, 47 U.S.C. § 605 and New York law.

19.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 605(e)(3)(A) and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the New York law claims asserted herein.

20.   This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00 exclusive of interest, costs, and attorneys' fees.

21.   Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein

occurred in Nassau County within this District and because Defendants reside or maintain places of business in this District.

### IV. Factual Background/DISH Network

22.  DISH Network (when describing the DISH Network system, DISH and EchoStar collectively will be referred to as "DISH Network") is a satellite television company, delivering hundreds of channels with movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee (or in the case of a pay-per-view movie or event, the purchase price).

23.  DISH contracts and pays for the distribution rights of copyrighted programming from networks, affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, event promoters, and other content providers, including content providers from outside the United States of America, such as content providers from South Asia including India and Pakistan.

24.  Because DISH generates revenues through the sale of subscription packages   and   pay-per-view programming, and because the ability to attract and retain distribution rights for programming is dependent upon preventing unauthorized   reception   of   DISH programming, DISH's video channels, except for a few promotional channels, are all digitally secured and encrypted.

25.  DISH Network digitally compresses and digitizes its satellite television programming and then encrypts (electronically scrambles) the signal before transmitting the signal to its customers in order to prevent unauthorized viewing of the programming by non-subscribers. DISH Network transmits its encrypted satellite signal to satellites above the earth, which in turn transmit the encrypted programming back down to customers who are equipped with EchoStar equipment consisting of a small satellite dish antenna and an

integrated receiver/decoder ("receiver").

26. DISH Network's encrypted satellite signal is received by a customer's satellite dish antenna and relayed by a cable wire to the consumer's EchoStar receiver. Inside each EchoStar satellite receiver is a NagraStar removable credit-card sized smart card that contains a microprocessor. On some newer models of satellite receivers, the smart card is integrated directly into the satellite receiver itself and is not removable. This NagraStar smart card (or "DISH Network access card") works with the receiver to decrypt or descramble the encrypted DISH Network satellite signal.

27. The satellite receivers and DISH Network access cards utilized in the DISH Network system are assigned unique serial numbers and those numbers are used by DISH Network when activating the satellite receiving equipment and to ensure that the equipment decrypts only the DISH Network programming that the customer is authorized to receive as part of their subscription package and pay-per-view purchases.

28. At times pertinent to the complaint DISH is and has been the beneficiary of agreements with, among others, the proprietors of 11 particular South Asian channels, "ARY DIGITAL", "ARY ONE (NEWS)", "ATN BANGLA", "CHANNEL I", "DAWN NEWS", "EXPRESS NEWS", "GEO TV", "GEO NEWS", "HUM", "PTV" and "TV ONE" and, at times pertinent to the complaint it had been a beneficiary of an agreement with the proprietor of the South Asian channel "EKHUSEY" (the "subject channels"), whereby DISH has obtained the rights to distribute the subject channels through its satellite signals in the United States to DISH's legitimate subscribers who have purchased the right and the authorization to receive the channels.

29. DISH's signals contain works protected by the US copyright law; the signals are not intended for the utilization of the general public.

## V. Factual Background/World Cable

30.   The Defendant World Cable is a Telecommunications Distribution Company which sells telephony services, high-speed data services and which operates a television signal distribution business ostensibly in the New York City/Long Island area. It is currently distributing television signals through an Internet Protocol Television (IPTV) system; this IPTV system is a distribution system through which television channels are delivered using the architecture and networking methods of the Internet Protocol Suite over the internet through broadband internet access networks.

31.   Much of the interaction between World Cable and its television signal subscribers is effectuated through its website, www.worldcable.tv, and through the utilization of electronic billing and credit card payments.

32.   World Cable's subscribers must pay a monthly subscription fee, at times pertinent to the Complaint, $56.50, to obtain the distribution of the television signals from World Cable. For this subscription fee the subscriber obtains approximately 130 channels, many of which originate in South Asia. World Cable has made statements on their website, www.worldcable.tv, that their services are for distribution in the "New York area" and the website has been operating since at least 2006

33.   As an integral part of its television signal distribution business, World Cable distributes and sells a set top box to its subscribers (the "World Cable box"). Currently, in addition to purchasing a World Cable subscription, a World Cable subscriber must purchase one of the World Cable boxes to subscribe to World Cable's television signal distribution services.

34.   The World Cable box is designed to make a direct-to-server internet connection with the World Cable server. Once connected to the World Cable server, the World Cable box

streams the video channels from the server directly onto subscriber's television set. The subscriber can then utilize a remote control tied to the World Cable box to switch channels and watch programming in real-time, almost as if the subscriber were watching the commensurate satellite television feed for the real-time programming.

35. The World Cable box is designed and configured to work exclusively with the World Cable server. The World Cable box is not a generic device and cannot be utilized by a subscriber/purchaser to receive signals from anyone other than the World Cable server.

36. The World Cable system, although delivering its signals through the internet, has almost all the functionalities of a satellite or cable television signal distribution system. The World Cable subscriber watches the signals being delivered on that subscriber's television set while operating the remote control to change to the various channels. This World Cable signal distribution system is very different than navigating to an internet website to view individual programming on a personal computer ("PC") screen where one would have to wait for each individual program to be buffered into the viewer's PC to be viewed on the PC's screen.

37. During the course of the Plaintiffs' undercover investigation of the Defendants, the Plaintiffs' investigators purchased two World Cable boxes.

38. The direct-to-server connection over the internet for the first World Cable box purchased by Plaintiffs during their investigation terminated at a particular Internet Protocol ("IP") address. From an unknown starting date until at least June 2011, the Plaintiffs' experts have determined that the IP address in question was in a range of IP addresses registered to "Bob Rasul," and that the web hosting company that effectuated the direct-to-server connection was the Defendant, Premium Hosting.

39. The direct-to-server connection over the internet for the second World Cable receiver

8

purchased by Plaintiffs during their investigation terminated at a particular IP address that is outside of the range of IP addresses associated with the first World Cable box. The Plaintiffs' experts have determined that the IP address in question is in a range of IP addresses registered anonymously and that the web hosting company that effectuated the direct-to-server connection as to these IP addresses is unknown to the Plaintiffs at this time.

40.   From December 23, 2006 to approximately 11:15 AM of December 1, 2011 when DISH terminated signal distributions to the account, an entity listed as "STATE WIDE SMGT" maintained a commercial subscriber account with DISH (the "Statewide account"). Upon information and belief, this account is associated with the Defendant Statewide Management Holding, Inc. ("Statewide").

41.   At times pertinent to the Complaint, Statewide had five separate EchoStar integrated receiver decoders (RECEIVERS) listed as active on this account receiving and decrypting DISH's signals, bearing serial numbers: R0080381823; R0081455994; R0078855235; R0078988218 and R0073393471.

42.   Pursuant to the commercial subscriber agreement between DISH and Statewide pertaining to the Statewide account, Statewide was not authorized to re-distribute signals from the account, and viewing of the signals purchased through the account was only authorized at the single commercial address associated with the account, the 1983 Marcus Ave. address.

43.   At times pertinent to this Complaint, the signals authorized for viewing only at the 1983 Marcus Ave. address through the Statewide account included the 5 subject channels: PTV (as of October 2011 DISH Network channel # 744), ARY DIGITAL (as of October 2011 DISH Network channel # 746), CHANNEL I, (as of October 2011 DISH Network

channel # 806), EKHUSEY (as of October 2011 DISH Network channel # 750) and ATN BANGLA, (as of October 2011 DISH Network channel # 818). On information and belief the Plaintiffs contend that at times pertinent to the Complaint and at least as of December 1, 2011, and presumably for some period of time prior to that date, the five receivers associated with the Statewide account were *not* located at the 1983 Marcus Ave address; the *only* address where Statewide was authorized to receive the Plaintiffs' signals. To date the Plaintiffs have been unable to determine where these receivers were located prior to December 2, 2011 when the five receivers associated with the Statewide account were surrendered by the Defendant, Sohail, to an agent of the Plaintiffs.

44.     At times pertinent to the Complaint, some or all of the receivers for the Statewide account were fully integrated into the World Cable *sys*tem and they were actively being utilized to effectuate the unauthorized re-broadcasting of the Plaintiffs' subject channels (see below).

45.     From June 25, 2004 to approximately 11:15 AM of December 1, 2011 when DISH terminated signal distributions to the *a*ccount, DISH had a particular residential subscriber's account with Sajid Sohail ("Sohail's first account").

46.     At times pertinent to the Complaint, Sohail had three separate EchoStar receivers listed as active on the account receiving and decrypting DISH's signals on Sohail's first account and bearing serial numbers: R0053416600; R0038531642 and R0035527026.

47.     Pursuant to the residential subscriber agreement between DISH and Sajid Sohail pertaining to Sohail's first account, Sohail was not authorized to re-distribute signals from the account, and the viewing of the signals purchased through the account was only authorized at the residential address associated with the account, the 270 I U Willets Rd. address.

48.     At times pertinent to the Complaint and at least as of December 1, 2011, and presumably for some period of time prior to that date, the 3 receivers associated with Sohail's first account were *not* located at the 270 I U Willets Rd. address; the *only* address where Sohail was authorized to receive the Plaintiffs' signals. To date the Plaintiffs have been unable to determine where these receivers are located as they have not been seized or so surrendered.

49.     From December 24, 2006 and continuing to approximately 11:15 AM of December 1, 2011 when DISH terminated signal distributions to the account, DISH had a particular residential subscriber's account with Sajid Sohail ("Sohail's second account").

50.     At times pertinent to the Complaint, Sohail had two separate EchoStar receivers listed as active on the account, receiving and decrypting DISH's signals on Sohail's second account and bearing serial numbers R0064424827 and R0066742196.

51.     Pursuant to the residential subscriber agreement between DISH and Sajid Sohail pertaining to Sohail's second account, Sohail was not authorized to re-distribute signals from the account, and the viewing of the signals purchased through the account was only authorized at the residential address associated with the account, 270 I U, #U, Willets Rd., Albertson, Nassau County, NY 11507, which was ostensibly a second apartment located in the same building as this Defendant's first account.

52.     At times pertinent to this Complaint, the signals authorized for viewing at the 270 I U Willets Rd. #U address through Sohail's second account included the channel: EXPRESS NEWS channel (as of October 2011 DISH Network channel #616).

53.     Sohail has never received signals at the 270 I U Willets Rd. #U address, the only address where Sohail was authorized to receive signals through Sohail's second account, because the address, "270 I U Willets Rd. #U", does not exist. 270 I U Willets Rd. is a single-

family home and the dwelling does not contain a second apartment.

54.   The 2 receivers associated with Sohail's second account were never located at the 270 I U Willets Rd. #U address, as that address does not exist and the receivers were also not located within the single-family home located at the 270 I U Willets Rd. address. To date the Plaintiffs have been unable to determine where these receivers were located prior to December 2, 2011 when the 2 receivers associated with Sohail's second account were surrendered by the Defendant, Sohail, to an agent of the Plaintiffs.

55.   At times pertinent to the Complaint some or all of the receivers for Sohail's second account were fully integrated into the World Cable system and they were actively being utilized to effectuate the unauthorized re-broadcasting of the Plaintiffs' subject channels (see below).

56.   From March 17, 2010 and continuing to approximately 11:15 AM of December 1, 2011 when DISH terminated signal distributions to the account, DISH had a particular residential subscriber's account with Yasmine Malik (the "Malik account").

57.   At times pertinent to the Complaint, Malik had three separate EchoStar receivers listed as active on the account, receiving and decrypting DISH Network's signals and bearing serial numbers: R0109658475; R0109608463 and R0109722637

58.   Pursuant to the residential subscriber agreement between DISH and Yasmine Malik pertaining to the Malik account, Malik was not authorized to re-distribute signals from the account and the viewing of the signals purchased through the account was only authorized at the residential address associated with the account, the 226 Floral Ave., address, an address where she did not reside as of December 1, 2011.

59.   At times pertinent to this Complaint the signals authorized for viewing at the 226 Floral Ave. address through the Malik account included the 5 subject channels: DAWN NEWS

(as of October 2011 DISH Network channel # 748), TV ONE (as of October 2011 DISH Network channel # 904), HUM (as of October 2011 DISH Network channel # 620), GEO NEWS (as of October 2011 DISH Network channel # 902) and GEO TV (as of October 2011 DISH Network channel # 745).

60. At times pertinent to the Complaint and at least as of December 1, 2011, and presumably for some period of time prior to that date, the 3 receivers associated with Malik were not located at the 226 Floral Ave. address, the only address where Malik was authorized to receive signals. To date the Plaintiffs have been unable to determine where these receivers were located prior to December 2, 2011 when the 3 receivers associated with the Malik account were surrendered by the Defendant, Sohail, to an agent of the Plaintiffs.

61. At times pertinent to the Complaint, some or all of the receivers for the Malik account were fully integrated into the World Cable system and they were actively being utilized to effectuate the unauthorized re-broadcasting of the Plaintiffs' subject channels (see below).

62. From February 23, 2007 continuing to approximately 11:15 AM of December 1, 2011 when DISH terminated signal distributions to the account, DISH had a residential subscriber's account with the Defendant Shahid Rasul who was utilizing the alias "Bob Rasul" (the "Rasul account").

63. The declared address for the Rasul account is 272 I U Willets Rd., Albertson, NY 11507. This is a residential address that simply does not exist; it is apparently a vacant lot. There is no building whatsoever with the designation 272 I U Willets Rd., Albertson, NY 11507. The fictitious address is ostensibly located next to the address for the Sohail's first account, the 270 I U Willets Rd. address.

64. At times pertinent to the Complaint, Rasul had three separate EchoStar receivers listed as active on the account, receiving and decrypting DISH Network's signals and bearing serial numbers: R0080504930; R0080052849 and R0083273667.

65. Pursuant to the residential subscriber agreement between DISH and Rasul pertaining to the Rasul account, Rasul was not authorized to re-distribute signals from the account, and the viewing of signals purchased through the account was only authorized at the residential address associated with the Rasul account, the 272 I U Willets Rd. address, a residential address which does not exist.

66. At times pertinent to this Complaint, the signals authorized for viewing at the 272 I U Willets Rd. address through the Rasul account included the channel: ARY ONE (NEWS) (as of October 2011 DISH Network channel # 747).

67. Rasul has never received signals at the 272 I U Willets Rd. #U address, the only address where Sohail was authorized to receive signals through the Rasul account, because the address, 272 I U Willets Rd., does not exist.

68. The 3 receivers associated with the Rasul account were never located at the the 272 I U Willets Rd. #U address as that address does not actually exist.

69. The receiver from the Rasul account bearing serial number R0080052849 was located at the 270 I U Willets Rd. address, the address associated with Sohail's first account on December 1, 2011 where it was seized by federal marshals.

70. At times pertinent to the Complaint and at least as of December 1, 2011 and presumably for sometime before that date, the receiver from the Rasul account bearing serial number R0080052849 was fully integrated into the World Cable system and it was actively being utilized to effectuate the unauthorized re-broadcasting of the Plaintiffs' subject channel ARY ONE (NEWS) (see below).

71.   To date the Plaintiffs have been unable to determine where the other two receivers associated with the Rasul account were located prior to December 2, 2011 when they were surrendered by the Defendant, Sohail, to an agent of the Plaintiffs.

72.   At times pertinent to the Complaint, payments to DISH for the Statewide account, the Rasul account, the Malik account and the two Sohail accounts were made by Sajid Sohail.

### VI. Defendants' Unlawful Conduct

73.   On or about October 29, 2011 (subsequently modified on November 10, 2011) this Court issued an *ex parte* Temporary Restraining Order empowering the federal marshals to seize all of the Defendants' EchoStar receivers specifically referenced above and any other EchoStar receivers the Defendants had custody or control over.

74.   Pursuant to this Court's Temporary Restraining Order in the early morning hours of December 1, 2011 federal marshals went to the Sohail residence located at the 270 I U Willets Rd. address where, after a thorough search of the property they discovered a single EchoStar receiver, specifically the IRD bearing serial number R0080052849.

75.   The receiver bearing serial number R0080052849 is from the Rasul account and was supposed to be at the nonexistent address 272 I U Willets Rd. When the receiver was discovered on December 1, 2011 it was connected to and feeding signals into an internet connection.

76.   Under the auspices of the federal marshals, the EchoStar receiver bearing serial number R0080052849 was removed from the internet connection and seized by the marshals; once removed, the World Cable channel carrying the signals for *ARY ONE (NEWS)* ceased displaying the signals.

77.   Pursuant to this Court's Temporary Restraining Order on December 1, 2011 federal

marshals thoroughly searched the Rasul residence located at the 226 Floral Ave. address and the Defendants business address located at the 49-62 Van Dam Street address, but were unable to locate any of the Defendants' other EchoStar Technologies set forth above which were subject to the seizure order in the Temporary Restraining Order.

78.   After the marshals were unable to locate the remaining EchoStar Technologies receivers, agents of the Plaintiffs terminated signals going into all of the Defendants' DISH accounts. At that point in time the World Cable channels carrying the signals for *GLOBAL, ARY DIGITAL, CHANNEL I, ATN BANGLA, EXPRESS NEWS, DAWN, TV ONE, HUM, GEO NEWS* and *GEO TV* ceased displaying signals.

79.   At times pertinent to the Complaint and at least as of December 1, 2011 the Defendants with DISH accounts were receiving signals through those accounts, but none of the Defendants were receiving the signals with authorization in that none of the Defendants with accounts were receiving the signals at the only addresses where they were authorized to receive signals.

80.   At times pertinent to the Complaint, all of the Defendants with DISH accounts were acting as undisclosed agents and/or employees of World Cable and entered into contracts with DISH whereby they obtained EchoStar receivers which were, without the authorization of DISH, fully integrated into the World Cable system and which were utilized to effectuate the unauthorized re-broadcasting of the Plaintiffs' subject channels.

81.   At times pertinent to the Complaint, World Cable and Premium Hosting, working in conjunction with Statewide, integrated receivers from the Statewide account into the World Cable system surreptitiously routing the signals of at least five (5) subject channels, where the channels were then placed into the World Cable channel lineup and distributed without the Plaintiffs' authorization to the World Cable subscribers. The

16

channels are:

    a.  PTV, as of October 2011, World Cable channel # 466 - DISH Network channel # 744;

    b.  ARY DIGITAL, as of October 2011, World Cable channel # 471 - DISH Network channel # 746;

    c.  CHANNEL I, as of October 2011, World Cable channel # 525 - DISH Network channel # 806;

    d.  EKHUSEY, as of October 2011, World Cable channel # 526 - DISH Network channel # 750; and

    e.  ATN BANGLA, as of October 2011, World Cable channel # 528 - DISH Network channel # 818.

82.    At times pertinent to the Complaint, World Cable and Premium Hosting, working in conjunction with Malik, integrated receivers from the Malik account into the World Cable system surreptitiously routing the signals of at least five (5) subject channels where the channels were then placed into the World Cable channel lineup and distributed without the Plaintiffs' authorization to the World Cable subscribers. The channels are:

    a.  DAWN NEWS, as of October 2011, World Cable channel # 465 - DISH Network channel # 748;

    b.  TV ONE, as of October 2011, World Cable channel # 470 - DISH Network channel # 904;

    c.  HUM as of October 2011, World Cable channel # 474 - DISH Network channel # 620;

    d.  GEO NEWS as of October 2011, World Cable channel # 483 - DISH Network channel # 902; and

e.   GEO TV as of October 2011, World Cable channel # 488 - DISH Network channel # 745.

83.   At times pertinent to the Complaint, World Cable and Premium Hosting, working in conjunction with Sohail, integrated the receivers from Sohail's second account into the World Cable system surreptitiously routing the signals of at least one subject channel where the channel was then placed into the World Cable channel lineup and distributed without the Plaintiffs' authorization to the World Cable subscribers. The channel is EXPRESS NEWS, as of October 2011, World Cable channel # 481 - DISH Network channel # 616.

84.   At times pertinent to the Complaint, World Cable and Premium Hosting, working in conjunction with Rasul, integrated the receivers from Rasul's account into the World Cable system surreptitiously routing the signals of at least one subject channelwhere the channel was then placed into the World Cable channel lineup and distributed without the authorization of the Plaintiffs to the World Cable subscribers. The channel is ARY ONE (NEWS), as of October 2011, World Cable channel # 472 - DISH Network channel # 747.

85.   The Defendants, World Cable and Premium Hosting are communications companies.

86.   The Defendants, Premium Hosting, Statewide, Sohail, Malik, Rasul, and John and Jane Does 1-5 times pertinent to the complaint were employees of, or agents for, and/or co-conspirators with the Defendant World Cable; as such these defendants can be considered communications personnel.

87.   In summary, at times pertinent to the Complaint at least twelve (12) DISH South Asian channels, the subject channels, have been re-broadcast and redistributed from DISH accounts into the IPTV distribution system without the authorization of DISH.

88.     The Defendants' conduct referenced above shall hereinafter be referred to as the "Defendants' re-broadcasting scheme."

89.     The Defendant Shahid Rasul, as the Chairman or Chief Executive Officer of World Cable, personally participated in World Cable's wrongful conduct, as alleged above and is personally liable for the wrongful conduct.

90.     The Defendant Shahid Rasul, as the President of Premium Hosting, also personally participated in Premium Hosting's wrongful conduct, as alleged above, and is personally liable for the wrongful conduct.

### V. Damages and Need for Relief

91.     On information and belief, and at times pertinent to the Complaint, the Plaintiffs contend a good faith estimate as to the number of World Cable television subscribers and/or boxes distributed would be at least between 1,000 and 2,000.

92.     Unless permanently enjoined, the Defendants will continue their piracy activities causing irreparable harm to Plaintiffs in that the amount of actual damage caused by the Defendants through the re-broadcasting of scheme described above cannot be readily calculated.

93.     Defendants' violations have injured and will continue to injure DISH by, among other things, depriving DISH of subscription revenues and other valuable consideration, compromising DISH Network's encryption technology, and interfering with contractual and prospective business relations.

94.     Defendants' violations have injured and will continue to injure EchoStar by, among other things, depriving EchoStar of revenues derived from the sale and/or distribution of legitimate DISH Network hardware and by interfering with EchoStar's contractual and prospective business relations.

95.   Defendants' violations have injured, and will continue to injure NagraStar, by, among other things, depriving NagraStar of revenues derived from the distribution of legitimate NagraStar smart cards to DISH Network and by interfering with NagraStar's contractual and prospective business relations.

## VI. The Counts

### COUNT I
### VIOLATIONS OF 47 U.S.C. § 605(a)

96.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

97.   Through the Defendants' re-broadcasting scheme described above, the Defendants violated various provisions of 47 U.S.C. §605 as described below.

98.   Through the re-broadcasting scheme described above, the Defendants violated provisions of 47 U.S.C. § 605(a) by, among other things, violating the third sentence of §605(a) by utilizing the Plaintiffs' radio signals for the subject channels in a manner to which they were not entitled including: effectuating the unauthorized receipt of signals; utilizing the signals at locations other than the subject addresses; utilizing the signals in their commercial re-broadcasting scheme; and selling and distributing the subject channels to the World Cable subscribers when the Defendants were only entitled to utilize the signals through viewing the signals at the specific addresses associated with their accounts. These unauthorized uses were for the benefit of Defendants and others, namely the World Cable subscribers.

99.   Defendants' violations have injured, and will continue to injure the Plaintiffs causing and continuing to cause the Plaintiffs irreparable harm.

100.   Defendants violated Section 605(a) of the Communications Act willfully, and for purposes of commercial advantage or private financial gain.

101.  Defendants knew or had reason to know that assisting a third person in the reception and use of DISH Network's satellite transmissions of television programming, without authorization, was and is illegal and prohibited.

102.  Pursuant to 47 U.S.C. § 605(e)(3), Plaintiffs are entitled to: equitable relief, either statutory damages of $1,000 to $10,000 per violation, (each World Cable subscriber) or actual damages plus any profits realized by Defendants for each violation of 47 U.S.C. § 605(a), reasonable attorney's fees, and costs. Plaintiffs seek all other relief to which they may be entitled.

103.  The Plaintiffs reserve the right to amend their claims as set forth in this Count, should further discovery reveal additional evidence of violations of 47 U.S.C. § 605(a).

**COUNT II**
**SALE AND DISTRIBUTION OF DEVICES**
**IN VIOLATION OF 47 U.S.C. § 605(e)(4)**

104.  Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

105.  Through the distribution of the World Cable receivers described above the Defendants have violated provisions of 47 U.S.C. § 605(e)(4) by, among other things, distributing the World Cable receivers knowing or having reason to know that the World Cable receivers were intended to be utilized in the re-broadcasting scheme as described above, activities prohibited by 47 U.S,C 605(a).

106.  Defendants' violations have injured, and will continue to injure, the Plaintiffs causing and continuing to cause the Plaintiffs irreparable harm.

107.  Defendants have violated Section 605(e)(4) of the Communications Act willfully and for purposes of commercial advantage or private financial gain.

108.  Pursuant to 47 U.S.C. § 605(e)(3), Plaintiffs are entitled to: equitable relief, either statutory damages of $10,000 to $100,000 per violation (each World Cable receiver), or

actual damages plus any profits realized by Defendants for each violation of 47 U.S.C. § 605(e)(4), reasonable attorney's fees, and costs. Plaintiffs seek all other relief to which they may be entitled.

## COUNT III
## UNJUST ENRICHMENT

109. Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

110. Through the re-broadcasting scheme described above the Defendants have received a financial benefit by, among other things, receiving subscription fees from the World Cable subscribers.

111. The financial benefit to the Defendants was to the detriment of the Plaintiffs in that the World Cable subscribers paid subscription fees to World Cable for signals which were the signals of DISH Network, but DISH Network did not receive the subscription fees for the World Cable subscribers.

112. The Defendants have been unjustly enriched through these actions, and equity in good conscience requires restitution to the Plaintiffs.

113. The Plaintiffs have been damaged through the unjust enrichment of the Defendants and seek remedy for same.

## COUNT IV
## CONVERSION

114. Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein

115. Through the re-broadcasting scheme described above the Defendants exercised and assumed the unauthorized dominion and control over the Plaintiffs' signals through their dissemination of the Plaintiffs' telecommunications signals to third parties without authorization.

116. The Plaintiffs were excluded from exercising any control over the dissemination of the

signals to third parties and gained no income from this unauthorized dissemination of signals.

117.   The Plaintiffs have been damaged through the Defendants' unjustified conversion of the Plaintiffs' telecommunications signals and seek remedy for same.

## COUNT V
## UNFAIR COMPETITION

118.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

119.   Through the re-broadcasting scheme described above the Defendants misappropriated the product of the Plaintiffs, namely their telecommunications signals.

120.   The Defendants' misappropriation of the Plaintiffs' telecommunications signals was undertaken in bad faith, whereby the Defendants sold said signals and obtained funds for them from the World Cable subscribers without the authorization of or payment to the Plaintiffs for the distribution of the signals to the World Cable subscribers.

121.   The Plaintiffs have been damaged through the Defendants' unfair competition with reference to the Plaintiffs' telecommunications signals and seek remedy for same.

## COUNT VI
## BREACH OF CONTRACT
## STATEWIDE MANAGEMENT, INC.

122.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

123.   Statewide Management Holding Inc. entered into a commercial subscriber agreement with DISH that, among other things, limited Statewide's authorization to receive and view DISH Network television programming only to the commercial location specified on the account, the 1983 Marcus Ave. address.

124.   The commercial subscriber agreement referenced above also specifically barred Statewide from re-broadcasting or transmitting DISH Network's signals.

125.   Through the re-broadcasting wherein Statewide re-broadcasted and distributed the

signals from each account to the World Cable subscribers, Statewide has breached its commercial subscriber agreement with DISH Network.

126. Through the unauthorized receipt of signals at other than the only address authorized through the account, Statewide has breached the commercial subscriber agreement with DISH Network.

127. As a direct and proximate result of Statewide's wrongful conduct and breach, the Plaintiffs have suffered and continue to suffer damages, including compensatory, consequential, and/or restitutionary damages, in an amount to be proven at trial.

128. Statewide knew or should have known that the conduct alleged herein violated the terms of the DISH commercial subscriber agreement and that Statewide was in breach of Defendant's obligations thereunder.

129. Such violations have caused and will continue to cause the Plaintiffs irreparable harm, and the Plaintiffs do not have an adequate remedy at law to redress such continued violations. Unless restrained by this Court, Statewide will continue to violate the DISH commercial subscriber agreement.

**COUNT VII**
**BREACH OF CONTRACT**
**SAJID SOHAIL**

130. Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

131. Sajid Sohail entered into residential subscriber agreements with DISH that, among other things, limited Sohail's authorization to receive and view DISH Network television programming only to the residential location specified on the accounts, the 270 I U Willets Rd. address and the 272 I U Willets Rd. #U address, an address which does not exist.

132. The residential subscriber agreements referenced above also specifically barred Sajid

Sohail from re-broadcasting or transmitting DISH Network's signals.

133. Through the re-broadcasting scheme described above wherein Sajid Sohail re-broadcasted and distributed the signals from his residential account to the World Cable subscribers, Sajid Sohail has breached his residential subscriber agreements with DISH.

134. Through the unauthorized receipt of signals other than the only address authorized through the accounts, Sajid Sohail has breached his residential subscriber agreements with DISH.

135. As a direct and proximate result of Sajid Sohail's wrongful conduct, the Plaintiffs have suffered and continue to suffer damages, including compensatory, consequential, and/or restitutionary damages, in an amount to be proven at trial.

136. Sajid Sohail knew or should have known that the conduct alleged herein violated the terms of the DISH residential subscriber agreement and that Sajid Sohail was in breach of Defendant's obligations thereunder.

137. Such violations have caused and will continue to cause the Plaintiffs irreparable harm, and the Plaintiffs do not have an adequate remedy at law to redress such continued violations. Unless restrained by this Court, Sajid Sohail will continue to violate the DISH residential subscriber agreement.

## COUNT VIII
## BREACH OF CONTRACT
## YASMINE MALIK

138. Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

139. Yasmine Malik entered into a residential subscriber agreement with DISH that, among other things, limited Yasmine Malik's authorization to receive and view DISH Network television programming to the only residential location specified on the account, the 226 Floral Ave. address, an address at which she did not reside as of December 1, 2011.

140.   The residential subscriber agreement referenced above also specifically barred Yasmine Malik from re-broadcasting or transmitting DISH Network's signals.

141.   Through the re-broadcasting scheme described above wherein Yasmine Malik re-broadcast and distributed the signals from her residential account to the World Cable subscribers, Yasmine Malik has breached her residential subscriber agreement with DISH.

142.   Through the unauthorized receipt of signals at other than the only address authorized through the account, the 226 Floral Ave. address. Yasmine Malik has breached her residential subscriber agreement with DISH

143.   As a direct and proximate result of Yasmine Malik's wrongful conduct, the Plaintiffs have suffered and continue to suffer damages, including compensatory, consequential and/or restitutionary damages, in an amount to be proven at trial.

144.   Yasmine Malik knew or should have known that the conduct alleged herein violated the terms of the DISH residential subscriber agreement and that Yasmine Malik was in breach of Defendant's obligations thereunder.

145.   Such violations have caused and will continue to cause the Plaintiffs irreparable harm, and the Plaintiffs do not have an adequate remedy at law to redress such continued violations. Unless restrained by this Court, Yasmine Malik will continue to violate the DISH residential subscriber agreement.

**COUNT IX**
**BREACH OF CONTRACT**
**SHAHID RASUL A/K/A "BOB RASUL"**

146.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

147.   Shahid Rasul a/k/a Bob Rasul entered into a residential subscriber agreement with DISH in the name of Bob Rasul that, among other things, limited Rasul's authorization to

receive and view DISH Network television programming to the only residential location specified on the account, the 272 I U Willets Rd. address, an address for a residential dwelling which simply does not exist.

148.   The residential subscriber agreement referenced above also specifically barred Rasul from re-broadcasting or transmitting DISH Network's signals.

149.   Through the re-broadcasting scheme described above wherein Rasul re-broadcast and distributed the signals from her residential account to the World Cable subscribers, Rasul has breached his residential subscriber agreement with DISH.

150.   Through the unauthorized receipt of signals at other than the only address authorized through the account, the 272 I U Willets Rd. address, an address for a residential dwelling which simply does not exist, Rasul has breached his residential subscriber agreement with DISH.

151.   As a direct and proximate result of Rasul's wrongful conduct, the Plaintiffs have suffered and continue to suffer damages, including compensatory, consequential and/or restitutionary damages, in an amount to be proven at trial.

152.   Rasul knew or should have known that the conduct alleged herein violated the terms of the DISH residential subscriber agreement and that Rasul was in breach of Defendant's obligations thereunder.

153.   Such violations have caused and will continue to cause the Plaintiffs irreparable harm, and the Plaintiffs do not have an adequate remedy at law to redress such continued violations. Unless restrained by this Court, Rasul will continue to violate the DISH residential subscriber agreement.

**COUNT X**
**FRAUD**
**SHAHID RASUL A/K/A "BOB RASUL"**

154.    Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

155.    On or about February 23, 2007 Defendant Shahid Rasul who was utilizing the alias "Bob Rasul" established an account with DISH Network requesting residential services for the 272 I U Willets Rd. address.

156.    This is a residential address that simply does not exist and did not exist in February of 2007.

157.    When Rasul initiated the account in February 2007 he knew no such address existed and he had no intent to ever receive services at the non-existent address. He knew it was false to claim that services would be going to the nonexistent address.

158.    The fact that the address did not even exist was material to the agreement between the parties; DISH would not knowingly provide signals for an address that does not exist.

159.    The Plaintiffs acted in reliance upon Rasul's full statement regarding the existence of the 272 I U Willets Rd. address and DISH created an account for Rasul for the nonexistent address.

160.    The Plaintiffs were not aware that the 272 I U Willets Rd. address did not exist and reasonably relied upon Rasul untrue statement to their detriment.

161.    The Plaintiffs provided services to Rasul through the account and Rasul subsequently utilized the signals in furtherance of the extensive and damaging re-broadcasting scheme referenced above.

162.    The Plaintiffs were damaged by the fraudulent statement made by Rasul in setting up the account in that, among other things, they suffered damages through the re-broadcasting scheme as set forth above and the signals obtained through the Rasul account were an important element of the re-broadcasting scheme.

163.    As a direct and proximate result of Rasul's fraudulent conduct, the Plaintiffs have

suffered and continue to suffer damages, including compensatory, consequential, and/or restitutionary damages, in an amount to be proven at trial.

164.   Additionally, the Plaintiffs are entitled to have Rasul disgorge the income made through his fraud, including the income made through the above-referenced re-broadcasting scheme.

165.   The fraudulent activities have caused and will continue to cause the Plaintiffs irreparable harm, and the Plaintiffs do not have an adequate remedy at law to redress such continued violations. Unless restrained by this Court, Rasul may continue to engage in fraudulent activities to the detriment of the Plaintiffs.

**COUNT XI**
**FRAUD**
**SAJID SOHAIL**

166.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth fully herein.

167.   On or about December 24, 2006 Defendant Sajid Sohail established an account with DISH Network requesting residential services for the 270 I U Willets Rd., # U address.

168.   This is a residential address, a second apartment ostensibly existing inside the single-family dwelling located at 270 I U, Willets Rd; yet, the 270 I U Willets Rd., # U address does not exist and did not exist in December 2006. There is no second apartment in the subject building.

169.   When Sajid Sohail initiated the account in December 2006 he knew no such address existed and he had no intent to ever receive services at the non-existent address. He knew it was false to claim that services would be going to the nonexistent address.

170.   The fact that the address did not even exist was material to the agreement between the parties; DISH would not knowingly provide signals for an address that simply does not exist.

171.   The Plaintiffs acted in reliance upon Sohail's untrue statement regarding the existence of the 270 I U Willets Rd., # U address and DISH created an account for Sohail for the nonexistent address.

172.   The Plaintiffs were not aware that the 270 I U Willets Rd., # U address did not exist and reasonably relied upon Sohail untrue statement to their detriment.

173.   The Plaintiffs provided services to Sohail through the account and Sohail subsequently utilized the signals in furtherance of the extensive and damaging re-broadcasting scheme referenced above.

174.   The Plaintiffs were damaged by the fraudulent statement made by Sohail in setting up the account in that, among other things, they suffered damages through the re-broadcasting scheme as set forth above and the signals obtained through the Sohail account were an important element of the re-broadcasting scheme.

175.   As a direct and proximate result of Sohail's fraudulent conduct, the Plaintiffs have suffered and continue to suffer damages, including compensatory, consequential, and/or restitutionary damages, in an amount to be proven at trial.

176.   Additionally, the Plaintiffs are entitled to have Sohail disgorge the income made through his fraud, including the income made through the above-referenced re-broadcasting scheme.

177.   The fraudulent activities have caused and will continue to cause the Plaintiffs irreparable harm, and the Plaintiffs do not have an adequate remedy at law to redress such continued violations. Unless restrained by this Court, Sohail may continue to engage in fraudulent activities to the detriment of the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs DISH, EchoStar, and NagraStar respectfully request that the Court grant the following relief:

1. Issue a permanent injunction enjoining the Defendants from further piracy activities, including re-broadcasting and retransmitting DISH Network's programming through the Defendants' IPTV system, and distributing and selling DISH Network's signals to Defendants' customers and others; with the terms of said injunction being in conformity with the relief as set forth in the Temporary Restraining Order and Preliminary Injunction entered by this Court modified to be in conformity with this Court's order dated September 28, 2012.

2. Issue an order, as an element of a preliminary and/or permanent injunction seizing from the Defendants and impounding with the Plaintiffs any and all EchoStar Technologies integrated receivers/decoders, access cards, and any and all other equipment, hardware and software utilized by them involved in effectuating the Defendants' re-broadcasting and retransmitting DISH Network's programming and any and all records, and related items, including records indicating the identities of and the numbers of World Cable subscribers who have received DISH Network signals without authorization, with the terms of said order being in conformity with the relief as set forth in the Temporary Restraining Order and Preliminary Injunction entered by this Court.

3. As to the First Cause of Action in this Complaint, award DISH, EchoStar, and NagraStar the greater of their actual damages together with any profits made by the Defendants that are attributable to the violations alleged herein or statutory damages in the amount of at least $1,000.00 and up to $10,000.00 for each violation of 47 U.S.C. § 605(a), and each World Cable subscriber or recipient of the subject signals, pursuant to 47 U.S.C. §

31

605(e)(3)(C)(i)(I) and/or 47 U.S.C. § 605(e)(3)(C)(i)(II) and up to an additional $100,000.00 for each violation of 47 U.S.C. § 605(a) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), with said award being made jointly and severally against all of the Defendants.

4.   As to the Second Cause of Action in this Complaint, award DISH, EchoStar, and NagraStar the greater of their actual damages together with any profits made by the Defendants that are attributable to the violations alleged herein or statutory damages in the amount of at least $10,000.00 and up to $100,000.00 for each violation (each World Cable box) of 47 U.S.C. §605(e)(4), pursuant to 47 U.S.C. §605(e)(3)(C)(i)(I) and/or 47 U.S.C. §605(e)(3)(C)(i)(II), amounting to a minimum of $10,000 for each and every subject device distributed, or sold by the Defendants, with said award being made jointly and severally against all of the Defendants.

5.   As to the Third Cause of Action in this Complaint, award DISH, EchoStar, and NagraStar money damages for all damages the Plaintiffs have suffered as a result of the Defendants' unjust enrichment.

6.   As to the Forth Cause of Action in this Complaint, award DISH, EchoStar, and NagraStar money damages for all damages the Plaintiffs have suffered as a result of the Defendants' conversion of their signals.

7.   As to the Fifth Cause of Action in this Complaint, award DISH, EchoStar, and NagraStar money damages for all damages the Plaintiffs have suffered as a result of the Defendants' unfair competition.

8.   As to the Sixth Cause of Action in this Complaint, award DISH money damages for all damages DISH has suffered as a result of the breach of contract by the Defendant Statewide Management Holding Inc.

9.  As to the Seventh Cause of Action in this Complaint, award DISH money damages for all damages DISH has suffered as a result of the breach of contract by the Defendant Sajid Sohail.

10. As to the Eighth Cause of Action in this Complaint, award DISH money damages for all damages DISH has suffered as a result of the breach of contract by the Defendant Yasmine Malik.

11. As to the Ninth Cause of Action in this Complaint, award DISH money damages for all the damages DISH has suffered as a result of the breach of contract by the defendant Shahid Rasul a/k/a "Bob Rasul".

12. As to the Tenth Cause of Action in this Complaint, award the Plaintiffs money damages for all the damages they have suffered as a result of the fraud perpetrated by the defendant Shahid Rasul a/k/a "Bob Rasul".

13. As to the Eleventh Cause of Action in this Complaint, award the Plaintiffs money damages for all the damages they have suffered as a result of the fraud perpetrated by the Defendant Sajid Sohail.

14. Issue an Order for an accounting and restitution by Defendant of all gains, profits, and advantages derived from Defendant's unlawful acts and practices.

15. Issue an Order freezing all of Defendants' assets pending an accounting and restitution by Defendants of all gains, profits, and advantages derived from Defendants' unlawful activities.

16. Award DISH, EchoStar, and NagraStar their costs, reasonable attorneys' fees, and investigative fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

17. Award DISH, EchoStar, and NagraStar prejudgment interest on all profits and damages granted by this Court.

18.   Award DISH, EchoStar, and NagraStar any such further and other relief as the Court deems justified.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

The Plaintiffs hereby assert their rights under the Seventh Amendment to the United States Constitution and demand, in accordance with FRCP 38, a trial by jury on all issues excepting the injunctive/equitable relief specifically sought above.

Respectfully submitted by the Plaintiffs through their Counsel

October 12, 2012
Date

/s/ John M. McLaughlin
　John M. McLaughlin (*pro hac vice*)
Green Miles Lipton, LLP
77 Pleasant Street; P.O. Box 210
Northampton, MA 01061
Telephone: (413) 586-0865
Fax: (413) 584-6278
jmclaughlin@greenmiles.com

October 12, 2012
Date

/s/ James Stephen Nowak
James Stephen Nowak
Bar No. JN0923
Kenney Shelton Liptak & Nowak, LLP
The Calumet Building
233 Franklin Street
Buffalo, NY 14202
Telephone: (716)-853-3801
Fax: (716)-853-0265
jsnowak@kslnlaw.com

34